UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY CHAPMAN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. C14-5475-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Gregory Chapman seeks review of the denial of his Disability Insurance Benefits applications. He contends the ALJ did not properly reject the opinions of evaluating physicians and treating therapists, assess his residual functional capacity, and determine the materiality of his alcohol abuse. Dkt. 12. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Chapman is currently 30 years old and spent almost eleven years serving in the Army. Tr. 42, 213. His application for Disability Insurance Benefits was denied initially and on reconsideration. Tr. 12, 105, 118. Following a hearing, the ALJ issued a decision finding that he

REPORT AND RECOMMENDATION - 1

was not disabled from his amended alleged on set date of November 1, 2012. Tr. 12-31. After the Appeals Council denied Mr. Chapman's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Chapman met the insurance requirements and had not engaged in substantial gainful activity since his original alleged onset date of February 7, 2012. Tr. 14. Mr. Chapman has the severe impairments of obesity, mild lumbar lordosis, status post patella tendon repair, headaches, alcohol dependence in reported remission, post traumatic stress disorder (PTSD), and major depressive disorder. Tr. 15. These severe impairments do not meet or equal the requirements of a listed impairment.[2]

As a result of his impairments, Mr. Chapman has the residual functional capacity (RFC) to perform light work with postural limitations including occasional climbing, kneeling, crouching, and crawling. He cannot climb ladders, ropes or scaffold, but can frequently balance and stoop. He must avoid concentrated exposure to vibrations. Mr. Chapman is able to perform unskilled work with simple repetitive tasks, and only occasional, superficial interaction with the general public and with co-workers. He is better able to deal with things rather than people. He is able to perform work that does not require exposure to crowds and is not in a military setting. He would be expected to be off-task over 10% of the time in the context of ongoing alcohol abuse. Tr. 18. With this RFC including the limitations associated with his alcohol abuse, Mr. Chapman cannot perform his past work as a cook, stock clerk, automobile detailer, or repossessor. Tr. 20. A Vocational Expert (VE) testified that he would be unable to find work in

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

the national economy, and the ALJ determined that he was disabled.

The ALJ then conducted a second analysis under the five-step procedure, eliminating the impact of alcohol abuse from the severe impairments and RFC in order to determine if Mr. Chapman's alcohol use is material to his disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The ALJ found that his remaining impairments are severe but do not meet or equal a Listing. Tr. 21. Mr. Chapman's RFC remained the same, except the ALJ removed the 10% of task limitation. Tr. 22. While still unable to perform his past work, the VE identified several jobs that exist in significant numbers in the national economy that Mr. Chapman can perform absent the limitations due to alcohol use. Tr. 31. Therefore, the ALJ determined that Mr. Chapman's alcohol use is a contributing factor material to the determination of disability, and he is not disabled. Tr. 31.

## DISCUSSION

### A. Medical Evidence

Mr. Chapman contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of the examining medical sources. When uncontradicted, the ALJ may only reject an examining doctor's opinion for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Rejection of an examining medical source that is contradicted by another doctor requires specific and legitimate reasons that are supported by substantial evidence in the record. *Id* at 831.

*1. Janis Lewis, Ph.D.*

Dr. Janis Lewis examined Mr. Chapman in February 2014. Tr. 2251-61. Her assessment included record review, an interview, mental status examination and Rey 15 test. Tr. 2251. Her findings conclude that Mr. Chapman would be unable to tolerate supervisor criticism and would

REPORT AND RECOMMENDATION - 3

1   be inflexible with regard to deviation from procedure and policies.  Tr. 2258.  He would exhibit
2   anger and fatigue, as well as self-doubt, slow pace, and clouded insight and judgment.  Tr. 2258.
3   Dr. Lewis found moderate to marked impairment in Mr. Chapman's ability to interact
4   appropriately with the public and peers, accept instruction from supervisors, maintain attention
5   and concentration, perform activities within a schedule, and complete a normal workday without
6   interruptions from psychological symptoms.  Tr. 2260.

7          The ALJ gave this opinion little weight.  Tr. 29.  In support of this assessment, the ALJ
8   cited multiple reasons: Dr. Lewis' findings are based on a one-time evaluation for disability
9   purposes; she expressed her findings in cursory "check box" format; her findings are based upon
10  Mr. Chapman's self-reports which lack credibility; Mr. Chapman gave inconsistent statements;
11  Dr. Lewis did not consider his symptomology in the context of his alcohol abuse.  AR 29.  None
12  of these reasons support the rejection of this medical source evidence.

13         The fact that Dr. Lewis only evaluated Mr. Chapman for the disability application does
14  not provide a legally sufficient reason to reject her medical opinion.  "The purpose for which
15  medical reports are obtained does not provide a legitimate basis for rejecting them.  An
16  examining doctor's findings are entitled to no less weight when the examination is procured by
17  the claimant than when it is obtained by the Commissioner."  *Lester*, 81 F.3d at 832.

18         The ALJ also reasoned that Dr. Lewis' opinions were entitled to less weight because they
19  were delivered in a cursory, "check box" format.  Indeed, the ALJ does not need to accept the
20  opinions of any physician that are brief, conclusory and inadequately supported by findings.
21  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  However, the record shows that Dr.
22  Lewis provided ample support for her "check box" opinions.  After her February 10, 2014
23  evaluation, Dr. Lewis provided an eight page psychological evaluation complete with

REPORT AND RECOMMENDATION - 4

observations and testing results. Tr. 2251-2258. These results formed the basis for her "check box" medical source statement issued on February 20, 2014. Tr. 2259-2261. The medical source statement references her full report, which provided adequate support and documentation for the resulting opinions.

According to the ALJ, this statement and analysis were properly rejected because they were based on Mr. Chapman's self-reports of dubious credibility. Mr. Chapman does not appeal the ALJ's assessment of his credibility, but raises the issue in the context of Dr. Lewis' opinion. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). In this case, Dr. Lewis does not express concerns about Mr. Chapman's credibility. She administered a Rey 15 test, and the result "does not support a finding of malingering." Tr. 2257. She reviewed a large number of Mr. Chapman's medical records, including those of other providers. She had the opportunity to identify and take into account his inconsistent reports, particularly with regard to his suicide attempts/suicidal ideation. Tr. 2251. She expressed no concern about inconsistency or malingering. Although the ALJ identified credibility issues, Dr. Lewis identified no reason to discredit claimant's complaints. Additionally, Dr. Lewis conducted a mental status examination which provided objective results, not based on Mr. Chapman's self-report. Tr. 2256-7. Dr. Lewis provided testing and observations and did not question Mr. Chapman's credibility. The ALJ erred by rejecting this medical source statement as based largely on claimant's self-report.

Finally, the ALJ cited Dr. Lewis' failure to consider Mr. Chapman's symptomology in the context of his alcohol abuse. Tr. 29. At the time of Dr. Lewis' evaluation, Mr. Chapman

REPORT AND RECOMMENDATION - 5

was compliant in his alcohol treatment program and had been sober since November 2013.  Tr. 2235.  Dr. Lewis was aware of and noted his history of alcohol abuse and sobriety.  Tr. 2257-8.  With his ongoing sobriety, Dr. Lewis had no need to address Mr. Chapman's symptoms in the context of alcohol use.

The ALJ committed significant errors of law and fact in rejecting Dr. Lewis' medical opinion.  As the main source of medical evidence concerning Mr. Chapman's mental impairments after his date of sobriety, the errors are harmful and require reversal.

### 2. *Richard Coder, Ph.D.*

Dr. Richard Coder examined Mr. Chapman in April 2013 as part of the Army's Medical Board Evaluation Process.  Tr. 323.  Dr. Coder concluded that Mr. Chapman's "psychiatric symptoms cause occupational and social impairment with reduced reliability and productivity."  Tr. 328.  This includes impairment in both short and long term memory, difficulty understanding complex commands, chronic sleep issues, depressed mood, anxiety, suspiciousness, and isolation. Tr. 328.  The ALJ gave these findings little weight.  Tr. 27.  "Although the claimant reports severe PTSD symptoms, Dr. Coder's evaluation does not address how the claimant's alcohol abuse exacerbates his psychological symptoms…Also undermining Dr. Coder's opinions and findings is the fact that he found the claimant was a reliable historian, which, as the record shows, is simply not the case."  Tr. 27.  Additionally, the ALJ discredited Dr. Coder's opinion as based almost entirely on claimant's unreliable self-report of symptoms.  Tr. 28.  The ALJ concluded that, "[a]lthough Dr. Coder's evaluation is a fair representation of the claimant's psychological symptomology while abusing alcohol, it is not representative of the claimant's functioning in the absence of alcohol."  Tr. 28.

Dr. Coder noted that Mr. Chapman reported using alcohol 30 times per month, starting in

2005 and continuing to the date of evaluation.  Tr. 326.  After acknowledging the existence of this substance abuse issue, Dr. Coder assessed that "[t]here are no consequences of the substance use."  Tr. 326.  Instead, Dr. Coder reports that Mr. Chapman's substance abuse is related to his PTSD diagnosis because he drinks to relieve the stress of the symptoms.  Tr. 327.  These remarks suggest that Dr. Coder found no impact of alcohol abuse on Mr. Chapman's mental health.  Tr. 327.  The ALJ's determination that Dr. Coder's assessment relates only to psychological symptoms during the period of alcohol abuse is not supported by the evidence in the record.

Additionally, the ALJ committed legal error by rejecting Dr. Coder's opinion as almost entirely based on Mr. Chapman's self-reports.  As noted above, the ALJ cannot reject a medical opinion based on the claimant's reliability where the physician does not question the credibility and supports the assessment with his own observations.  *Ryan*, 528 F.3d at 1199-1200.  Dr. Coder amply supports his opinion with his own observations based on depression and anxiety testing and a mental status exam.  Tr. 323, 326.  His report gives findings and the supporting objective test results.  Tr. 326.  As part of his assessment, Dr. Coder reviewed a significant number of medical records.  Tr. 327.  He had the opportunity to discover and evaluate any inconsistencies in Mr. Chapman's medical history and reports.  Dr. Coder found nothing of concern, noting instead that Mr. Chapman is a reliable historian.  Tr. 326.  Dr. Coder based this determination on an extensive record review, interview and testing.  Without concerns as to Mr. Chapman's reliability and objective testing to inform the observations and opinions, the ALJ improperly rejected Dr. Coder's medical opinion.  This harmful error requires reversal for further consideration of the opinion.

**B. Therapist opinions**

Mr. Chapman's therapists, Robbi Robertson, LICSW and Jennifer Sweet, LICSW, both

provided opinions as to his mental impairments stemming from his PTSD.  Private and public social welfare agency personnel, like licensed social workers Ms. Robertson and Ms. Sweet, are considered "other sources" under 20 C.F.R. § 404.1513(d)(3).  Germane reasons are required for rejecting the evidence of these lay witnesses. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-4 (9th Cir. 2010).  Here, the ALJ rejected the opinions because they were expressed in cursory, "check box" format without explanation, they reflected "marked" impairment in several areas inconsistent with Mr. Chapman's demonstrated functioning, and they are based largely upon his self-reported symptoms.  Tr. 29.

Both Ms. Robertson and Ms. Sweet completed "check box" medical source statements rating the degree of limitation caused by Mr. Chapman's mental health impairments.  Tr. 2245-50.  However, both therapists also included a supporting narrative providing information about Mr. Chapman's PTSD symptoms and functionality.  Tr. 2247, 2250.  The therapists also completed more extensive medical opinions a few weeks before the medical source statements.  Tr. 2263-2268.  In these assessments, Ms. Robertson and Ms. Sweets gave reasons to support the symptoms and limitations caused by PTSD.  Tr. 2264-5, 2267-8.  These assessments informed the medical source statements and gave more information for the record.  Ms. Robertson and Ms. Sweets provided more substantial evidence and documentation than noted by the ALJ.

Both Ms. Robertson and Ms. Sweets indicated that alcohol was not a material factor.  Tr. 2264, 2267.  Neither therapist had witnessed intoxicated behavior or had knowledge of Mr. Chapman's abuse of alcohol.  They also completed their limitation ratings under the direction to omit limitations stemming from alcoholism or drug use.  Tr. 2245, 2248.  The form specifically states, "do not include limitations which would go away if the individual stopped using alcohol or drugs."  Tr. 2245, 2248.  Clearly, Ms. Robertson and Ms. Sweets assessed significant

REPORT AND RECOMMENDATION - 8

limitations and symptoms without alcohol use.  Rather than reject these opinions, the ALJ should have used this evidence in her analysis of the materiality of alcohol use.

The ALJ also rejected the therapists' opinions as largely based on Mr. Chapman's unreliable subjective complaints.  The record does not support this conclusion. Ms. Robinson's January 2104 opinion states that she has personally observed Mr. Chapman's symptoms.  Tr. 2264.  Similarly, Ms. Sweets also notes that she personally observed symptom of PTSD such as withdrawal, hypervigilance, anxiety, and avoidance.  Tr. 2267.  "Greg has been enrolled in a 16 week group- cognitive processing therapy for combat PTSD—he has demonstrated the above symptoms to varying degrees."  Tr. 2267.  Both of these therapists worked with Mr. Chapman in a therapeutic capacity.  They had significant opportunity to observe and formulate independent conclusions concerning his mental health impairments, without relying solely on his self-reported complaints.

Finally, the ALJ gave little weighy to the therapists' statements because they are inconsistent with Mr. Chapman's demonstrated functioning.  In particular, the ALJ noted elsewhere in the decision that Mr. Chapman has a roommate, uses public transportation, shops online, and handles his own finances.  Tr. 21.  The ALJ also concluded that Mr. Chapman does not isolate to the extent that he and his therapists allege because he sees his infant son and takes spin, yoga, and swimming classes.  Tr. 21.  The record shows that Mr. Chapman is required to attend yoga, swimming, and spin classes, among others, as part of the Wounded Warrior Battalion.  Tr. 69-71.  These are not activities he chooses for pleasure, but mandatory physical training that occurs in the supportive environment of his battalion.

Furthermore, the ability to spend time with his children, use public transport, shop online, and handle finances does not preclude disability.  Disability claimants should not be penalized

REPORT AND RECOMMENDATION - 9

for attempting to lead normal lives.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Complete incapacitation is not required to receive benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The ALJ should have given more weight to the important opinions of Mr. Chapman's treating therapists.  Although not "acceptable medical sources," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p.  On remand, the ALJ should reconsider the assessments provided by Ms. Robertson and Ms. Sweets.

### C. Materiality of Alcohol Abuse

The ALJ determined that taking all impairments into consideration, Mr. Chapman was disabled.  But, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.  A claimant cannot be considered disabled for the purposes of awarding benefits if drug addiction or alcoholism ("DAA") is a contributing material factor to the determination of disability.  42 U.S.C. § 1382c(a)(3)(J).  Mr. Chapman's history required the ALJ to conduct an additional five-step inquiry, without the limitations stemming from his alcohol use, to determine whether his substance use is a contributing material factor to his disability.

The ALJ concluded that without alcohol use, Mr. Chapman would not be off task 10% of the time, and could perform jobs in the economy under the new RFC.  Tr. 22, 30-1.  However, the ALJ arrived at this RFC and ensuing disability determination after improperly discounting the evidence from Drs. Lewis and Coder, and therapists Ms. Robertson and Ms. Sweet.  These errors result in a RFC and hypotheticals to the Vocational Expert that may not accurately reflect Mr. Chapman's limitations while sober.  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working

REPORT AND RECOMMENDATION - 10

capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1980). With a defective RFC and incorrect hypotheticals, the ALJ has not met the burden of proving that Mr. Chapman can perform other work in the economy. *Valentine v. Comm'r of Soc. Sec*, 574 F.3d 685, 689 (9th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g)**.**  On remand, the ALJ should reconsider the opinions provided by Dr. Lewis, Dr. Coder, Ms. Robertson, and Ms. Sweets, reassess Mr. Chapman's RFC without the limitations caused by alcohol use, and conduct a new step-five analysis as needed.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **February 4, 2015**.  If no objections are filed, the matter will be ready for the Court's consideration on **February 6, 2015**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

DATED this 21st day of January, 2015.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11